IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

WILLIAM BARNARD                                                                    PLAINTIFF

v.                                    CIVIL NO. 16-3008

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, William Barnard, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI") under the provisions of Title XVI of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed his application for SSI on June 4, 2013. (ECF No. 9, pp. 19, 189). In his application, Plaintiff alleges disability due to lower back injury, protruding and herniated disks, and pain and numbness in his legs. (ECF No. 9, p. 193). Plaintiff alleges an onset date of March 21, 2012. (ECF No. 9, pp. 19, 189). This application was denied initially and again upon reconsideration. (ECF No. 9, pp. 55-76).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Thereafter, Plaintiff requested an administrative hearing on his denied application, and this hearing request was granted. (ECF No. 9, pp. 92-95). Plaintiff's administrative hearing was held on May 8, 2014, in Fort Smith, Arkansas (ECF No. 9, pp. 32-54). Plaintiff appeared in person and was represented by Nick Coleman. Id. Plaintiff and Vocational Expert ("VE") Tanya Owen testified at this hearing. Id. At the time of this hearing, Plaintiff was twenty-three (23) years old, which is defined as a "younger person" under 20 C.F.R. § 416.963(c). As for his level of education, Plaintiff has a high school diploma. (ECF No. 9, pp. 37-38).

After this hearing, on August 28, 2014, the ALJ entered an unfavorable decision denying Plaintiff's application for SSI. (ECF No. 9, pp. 15-26). In this decision, the ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since June 4, 2013, Plaintiff's application date. (ECF No. 9, p. 21, Finding 1). The ALJ determined Plaintiff had the following severe impairments: Musculoskeletal Disorder (Back Disorder, degenerative disc disease) (7240) and Obesity (2780). (ECF No. 9, p. 21, Finding 2). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 9, pp. 21-22, Finding 3).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 9, pp. 22-25, Finding 4). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform, "the full range of sedentary work as defined in 20 C.F.R. 416.967(a)." Id. The ALJ then determined Plaintiff had no Past Relevant Work ("PRW"). (ECF No. 9, p. 25, Finding 5). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined Medical-Vocational Rule 201.27 directed a finding of "not disabled." (ECF

No. 9, p. 25, Finding 9). The ALJ therefore determined Plaintiff had not been under a disability, as defined by the Act, from June 4, 2013, Plaintiff's alleged onset date, through August 28, 2014, the date of the ALJ's decision. (ECF No. 9, p. 25, Finding 10).

Thereafter, on October 27, 2014, Plaintiff requested a review by the Appeals Council (ECF. No. 9, p. 10). The Appeals Council denied this request on November 17, 2015. (ECF No. 9, pp. 5-9). On January 20, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on February 3, 2016. (ECF No. 5). This case is now ready for decision.

## II.  Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and

3

that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920(a)(4)(v).

### III. Discussion:

Plaintiff raises three issues on appeal: 1) the ALJ improperly discredited Plaintiff's subjective complaints; 2) the ALJ improperly relied on the Medical-Vocational Guidelines; and 3) the ALJ committed reversible error in failing to obtain additional evidence from Dr. Ted Honghiran (ECF No. 12).

### A. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

The record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible. Plaintiff's treatment was generally conservative and Plaintiff did not pursue the treatment options recommended to him. For example, Dr. Lee stated that he "would strongly recommend avoiding surgery," and referred Plaintiff to a pain management facility in Branson. (ECF No. 9, p. 343). The record contains no evidence Plaintiff followed up with the pain management referral. Instead, Plaintiff told Dr. Honghiran he was treating his back pain with over the counter medications because he lacked insurance and was unable to afford further treatment. (ECF No. 9, p. 353). The record contains no evidence, however, Plaintiff sought any low-cost or free healthcare services for additional treatment. On December 18, 2012, Dr. Anna Kahn, D.C., Plaintiff's chiropractor stated, "Patient reports that he is still having his [low back pain] and that this will be his last visit secondary to financial difficulties. He reports that he has pain with [range of motion], but that

5

his pain did improve with [treatment], but that he felt that if he had more [treatment], he would have improved even more." See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain); See also Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility"); See also Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992) (Generally, a lack of evidence that a claimant attempted to find any low cost or no cost medical treatment for his alleged pain and disability is inconsistent with a claim of disabling pain). Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely credible.

### B. RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 416.945. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff presented to Baxter Regional Medical Center on March 21, 2012, and complained of low back pain and a mild headache, and reported being involved in a motor vehicle accident approximately three and a half hours prior. (ECF No. 9, p. 275). The record indicates Plaintiff was ambulatory and in no visible distress. Id. Physical examination of Plaintiff revealed tenderness to palpation in Plaintiff's lumbar spine, but revealed no other abnormal findings of Plaintiff's back, musculoskeletal, and neurological systems. (ECF No. 9, p. 276). X-rays of Plaintiff's lumbar spine showed no abnormalities. (ECF No. 9, p. 279). Plaintiff was advised to take over the counter Ibuprofen for three days for pain, and was prescribed Norco for breakthrough pain. Plaintiff underwent an MRI of his lumbar spine on June 13, 2012, which showed central canal narrowing at L5-S1 secondary to a protruding disc, central canal and right neuroforaminal narrowing secondary to a protruding/herniated disc at L4-L5, and a bulging disc and central protrusion at L3-L4. (ECF No. 9, pp. 303, 336).

Thereafter, Plaintiff followed up with Dr. Bogle on June 25, 2012. (ECF No. 9, p. 334-35). Dr. Bogle's physical examination of Plaintiff revealed some paraspinal muscular tenderness in Plaintiff's lower back, but otherwise found no abnormal results. Id. Dr. Bogle diagnosed Plaintiff with back pain and prescribed Flexeril, Mobic, and Vicodin. Id. Dr. Bogle advised Plaintiff that he needed to seek treatment from a neurosurgeon. Id.

Plaintiff began treatment with a chiropractor on October 22, 2012. (ECF No. 9, p. 306). Plaintiff attended five treatment appointments between October 22, 2012, and December 18, 2012. (ECF No. 9, pp. 306-10). On December 18, 2012, Plaintiff's chiropractor stated, "this will be his last visit secondary to financial difficulties. He reports that he has pain with [range of motion], but that his pain did improve with [treatment], but that he felt that if he had more [treatment], he would have improved even more. . . . Will [treat] patient in future if he is able

to present for care, as he did benefit from lumbar traction/decompression." (ECF No. 9, p. 310).

The record does not indicate Plaintiff ever returned for further chiropractic treatment. Instead, Plaintiff returned to Baxter Regional Medical Center four days later on December 22, 2012, and complained of continuing back pain. (ECF No. 9, pp. 296-99). A physical examination of Plaintiff revealed moderate sacral midline tenderness and positive straight leg raises at sixty degrees, but musculoskeletal and neurological examinations revealed no abnormal findings. (ECF No. 9, pp. 298-99). Plaintiff was prescribed Acetaminophen-Hydrocodone and Prednisone for pain and inflammation. (ECF No. 9, p. 296).

The record does not indicate Plaintiff sought any further treatment until May 10, 2013, until he met with Dr. Wozniak to establish care. (ECF No. 9, pp. 320-21). Dr. Wozniak noted Plaintiff had not been taking any prescription pain medication for his back pain. Id. Dr. Wozniak also indicated that Plaintiff told him he was referred to physical therapy with minimal benefit, but the record does not contain any evidence Plaintiff attended physical therapy, unless Plaintiff was referring to his chiropractic appointments in 2012. Id. Physical examinations of Plaintiff's musculoskeletal and neurological systems revealed no abnormalities. Id. Dr. Wozniak diagnosed Plaintiff with lumbago with sciatica and a bulging lumbar disc, and prescribed Plaintiff Percocet and Zanaflex and referred him to a neurosurgeon. Id. Plaintiff followed up with Dr. Wozniak two more times, on May 27, 2013, and June 22, 2013, but at each appointment examinations of Plaintiff's musculoskeletal and neurological systems revealed no abnormal results. (ECF No. 9, pp. 322-25).

Plaintiff met with a neurologist, Dr. Sunghoon Lee, on August 1, 2013. (ECF No. 9, pp. 342-48). Physical examination of Plaintiff revealed no abnormal findings. Id. Dr. Lee stated

as follows: "He has disc bulges at L4-L5 and L5-S1 of a modest extent without clear-cut neural compression, which I would strongly recommend avoiding surgery, and we will support referral to pain management in Branson." (ECF No. 9, pp. 343, 346). The record does not contain any evidence Plaintiff followed up with a pain management facility. Nor does the record contain any evidence Plaintiff sought further medical treatment for his back pain after his June 22, 2013, appointment with Dr. Wozniak aside from Plaintiff's August 1, 2013, consultation with Dr. Lee.

Plaintiff met with Dr. Ted Honghiran on June 9, 2014, for a general physical consultative examination at the request of Plaintiff's counsel. (ECF No. 9, pp. 349-55). Dr. Honghiran noted Plaintiff stated that his neurosurgeon in Harrison told him he did not need surgery and that Dr. Lee in Springfield told him he was too young for surgery and had advised him to lose weight. (ECF No. 9, p. 352). Dr. Honghiran also noted Plaintiff stated he was taking over the counter pain medication due to financial hardship. Id. Dr. Honghiran described Plaintiff as markedly obese. (ECF No. 9, p. 353). He observed Plaintiff walked normally without a limp and was able to dress and undress himself and get on and off the exam table without assistance. Id. Dr. Honghiran noted Plaintiff's lumbar spine range of motion was limited to sixty degrees due to pain and that there was minimal muscle spasm in Plaintiff's lower back. Id. Straight leg raise tests were negative bilaterally and reflexes and sensation in Plaintiff's knees and ankles were normal. Id. Dr. Honghiran further indicated on a Range of Motion Chart that Plaintiff's lumbar flexion was sixty degrees out of a possible ninety, and his lumbar extension and left and right lumbar lateral flexion were all normal at twenty-five degrees. (ECF No. 9, p. 355). Dr. Honghiran opined as follows: "[Plaintiff's] prognosis is good.

I believe that he should do exercises and try to lose weight, and give this some more time. I do not think that surgery is required." (ECF No. 9, p. 353).

The foregoing represents substantial evidence supporting the ALJ's RFC determination that Plaintiff was limited to the full range of sedentary work. Plaintiff's treatment was routinely conservative with multiple physicians recommending that he treat his pain with medication and weight loss and avoid surgery. See. Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with Plaintiff's allegations of disabling pain). There were also long periods of time where Plaintiff failed to seek treatment by continuing chiropractic treatment, working with a physical therapist, or consulting a pain management clinic. Although Plaintiff claims he was unable to receive ongoing treatment due to financial hardship, the record contains no evidence Plaintiff sought and was denied access to low or no cost healthcare services. Plaintiff's treating physicians never placed physical restrictions on Plaintiff, and instead encouraged him to exercise to lose weight while treating his pain with medication, a treatment mode further recommended by the consultative examiner, Dr. Honghiran. The objective medical evidence, the opinion evidence, and other evidence in the record as a whole is further consistent with the findings of the non-examining state agency consultants which determined Plaintiff was limited to the full range of sedentary work.

Plaintiff argues the ALJ failed to develop the record, specifically that the ALJ should have sought an RFC assessment from Dr. Honghiran. (ECF No. 13). The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a

reasonably complete record. Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Plaintiff's argument that the ALJ failed to fully and fairly develop the record is without merit. Plaintiff's counsel requested the ALJ acquire a general physical consultative examination of Plaintiff. (ECF No. 9, p. 349). A general physical consultative examination is exactly what the ALJ asked Dr. Honghiran for, an "orthopedic exam with narrative report," which is what Dr. Honghiran provided. (ECF No. 9, p. 350). Plaintiff's counsel did not request the ALJ ask Dr. Honghiran to provide a Physical RFC Assessment. Nor was the ALJ required to request Dr. Honghiran provide a Physical RFC Assessment. The ALJ had before him the evaluations and treatment records of numerous healthcare providers which, as more specifically set forth above, provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged impairments. The Court also notes that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding Plaintiff's limitations, and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged impairments. The Court therefore finds the ALJ satisfied his duty to fully and fairly develop the record.

The Court notes that in determining Plaintiff's RFC, the ALJ considered the treatment notes and medical opinions of many treating physicians, and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the

opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (8th Cir. 2000) (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### C. Medical Vocational Guidelines:

The Medical-Vocational Guidelines, or Grids, "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." McCoy v. Astrue, 648 F.3d 605, 613 (8th Cir.2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). The Grids come into play at step five of the analysis, where "the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." Holley v. Massanari, 253 F.3d 1088, 1093 (8th Cir.2001). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir.1993) (internal quotation marks and citation omitted). Generally, when a claimant suffers from nonexertional limitations such as pain, the ALJ cannot rely on the Guidelines; however, the Guidelines are properly used if nonexertional limitations "do not diminish or significantly limit the claimant's [RFC] to perform the full range of Guideline-listed activities," or if the claimant's related

subjective complaints are properly discredited. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006) (quoting Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005)).

Plaintiff argues the ALJ improperly relied on the Grids to direct his decision. Having determined the ALJ's RFC determination, that Plaintiff could perform the full range of sedentary work as defined by the regulation, was supported by substantial evidence in the record as a whole, it is clear that Plaintiff's RFC did not include nonexertional limitations that diminish or significantly limit Plaintiff's ability to perform the full range of Guideline-listed activities. I therefore find the ALJ was properly permitted to rely on the Medical-Vocational Guidelines to direct his finding that Plaintiff was not disabled during the relevant period.

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 9th day of June, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE